

# NUMBER 13-19-00446-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JAMES M. BEGGS, LYNDA LANDERS,
AND BEGGS LANDERS LAW FIRM, PLLC,                    Appellants,

v.

CLARK, LOVE, & HUTSON, PLLC AND
CLARK, LOVE & HUTSON, GP,                             Appellees.

### On appeal from the 23rd District Court
### of Wharton County, Texas.



# NUMBER 13-19-00454-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

JAMES M. BEGGS, LYNDA LANDERS,
AND BEGGS LANDERS LAW FIRM, PLLC,                    Appellants,

v.

CLARK, LOVE, & HUTSON, PLLC AND
CLARK, LOVE & HUTSON, GP,                            Appellees.

---

### On appeal from the 23rd District Court
### of Wharton County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Tijerina**
**Memorandum Opinion by Justice Benavides**

By five issues, appellants James Beggs, Lynda Landers, and the Beggs Landers

Law Firm, PLLC (Beggs Landers) challenge the trial court's denial of its motion to dismiss

the lawsuit against them.[1] The motion to dismiss was filed under the Texas Citizen's Participation Act (TCPA) by Beggs Landers in the lawsuit filed by appellees Clark, Love, & Hutson, PLLC and Clark, Love, & Hutson, G.P. (Clark Love). Beggs Landers argues that: (1) the TCPA applies to this "retaliatory" lawsuit; (2–3) the commercial speech and bodily injury exemptions are not applicable to the TCPA in this case; (4) Clark Love did not submit clear and sufficient evidence to establish its prima facie case on each element on its causes of action; and (5) Beggs Landers established its absolute immunity/communicative privilege defense. We affirm.

## I. BACKGROUND

Clark Love represented women suing the manufacturers of transvaginal mesh (TVM) products in their settlement cases. Clark Love had contracts that established an attorney-client relationship with each of the women. The 23rd District Court in Wharton County was appointed to control the trust used in the TVM settlements. According to Clark Love's brief, the Wharton court utilized a protocol to handle the TVM settlements and determined the settlements were "fair and reasonable." While some of the TVM cases have been settled, others are still pending resolution.

Beggs Landers is a Texas law firm that was established in May 2019. Shortly after it was established, Beggs Landers began sending out unsolicited direct mail advertisements to Clark Love's TVM clients, both current and former. Clark Love alleged in its petition that Beggs Landers used confidential and proprietary information and client

---

[1] Appellate cause number 13-19-00446-CV is the appeal of the denial of Beggs Landers's motion to dismiss. Appellate cause number 13-19-00454-CV is the appeal by Beggs Landers of the injunction issued by the trial court and will be addressed later in this memorandum opinion.

lists to obtain the addresses it mailed advertisements to. Clark Love stated that the information of some of its clients was not "readily available or ascertainable from public records."

The advertisements referred to the TVM settlements as "small and puny." One of the advertisements included as an exhibit to the petition stated:

**Women who have signed settlement paperwork for a TVM claim with a lawyer, please read this:**

"So many women I know were sold down the river by their law firm. I know the medical device company doesn't care, but the lawyers promised to protect the interests of those that are injured, not their own. Most need treatment for the rest of their lives and will never get it."

**We are investigating cases where lawyers who settled cases did so without:**

- protecting or filing the claim in either State or Federal Court;

- never properly working up the case when they received it;

- never ordered the medical records or treatment records to prove the case;

- negotiated small and puny settlements that were not consistent with the womans [sic] injuries or the past verdicts for these types of cases.

**If you feel this describes your situation, we want to hear you story.**
[Phone number included in advertisement.]

Clark Love also attached articles as exhibits. One from the *New York Times* was titled:

**For Women, It Was Painful. For Lawyers, It Was Profitable.**

Another article from the *Texas Lawyer* was titled:

**Ex-Client Sues Houston PI Firm for 'Secret Arrangement' With Other Firm.**

An additional advertisement was introduced from the MeshNewsDesk website that

showed the Beggs Landers's logo and stated:

> **Houston, We Have a Problem . . .**
>
> And the problems continue for women who have had TVM. We have filed a lawsuit against some Houston lawyers for breach of fiduciary duty and we continue to investigate the claims. If you've had a mesh settlement and feel your case was mishandled, please contact us immediately.
>
> We would like to hear you and your family's story. [Phone number included in advertisement.]

The ad appeared in at least two places on the MeshDeskNews website for multiple days. It also included additional articles that discussed large settlements in other TVM cases around the country. The articles were all redacted in the pleadings except for the title.

Clark Love alleged that representatives from Beggs Landers publicly disclosed confidential settlement amounts that had been sealed by the Wharton trial court and gave quotes regarding the settlements to a *New York Times* writer. The *New York Times* later published an article that was made available online. Clark Love also argued that the Beggs Landers's mailed advertisements violate the Texas Disciplinary Rules of Professional Conduct because they fail to state that they are advertisements, fail to name any lawyer responsible for them, were not signed or approved in writing by Beggs Landers, and do not disclose how the information prompting the advertisements was obtained. Even though the advertisements do not identify the name of a lawyer or law firm, they did contain a toll-free telephone number which stated the following message when called:

> Thank you for calling Beggs Landers Law. Your call regarding MESH is important to us. Please leave a message and we will call you back as soon as possible. Please leave a message after the tone.

Clark Love also alleged that some of the clients who were solicited by Beggs Landers never had their identity disclosed in "any public record filings" and without the public information, Beggs Landers "willfully, maliciously, and unlawfully acquired, disclosed, and/or used, and therefore misappropriated, [Clark Love]'s clients and former clients to sue [Clark Love.]" Additionally, Clark Love stated that "Beggs Landers apparently went to great lengths to conceal its identity and location in the written advertisements and solicitations," by using a California return address and postal mark.

On June 13, 2019, Beggs Landers filed a lawsuit in federal court against Clark Love on behalf of some of Clark Love's current and past TVM clients. In the suit, Beggs Landers alleged that Clark Love had engaged in "improper conduct" in the prosecution and settlement of the TVM claims and alleged breach of fiduciary duties, fraud by non-disclosure, and sought fee forfeiture and exemplary damages.

Clark Love filed a petition in state court in Wharton County. Clark Love's petition alleged that the complaint in the federal case "contains specific allegations that improperly impugn the ongoing settlement trust administration that has occurred in Wharton County"; included claims for (1) tortious interference with contract and business relations, (2) Texas Uniform Trade Secrets Act (TUTSA) violations, and (3) civil conspiracy; and requested monetary damages, a declaratory judgment, temporary restraining order, and temporary and permanent injunction.

Beggs Landers filed its answer and also filed its motion to dismiss under the TCPA. It alleged that Clark Love's petition and request for injunction was "based on, related to, or in response to [Beggs Landers's] *right of free speech*" and that its communication was

a "matter of public concern" which related to "matters of health and safety and services in the marketplace." Beggs Landers claimed that its advertising was an exercise of its right to petition and right of association. It argued that Clark Love did not establish a prima facie case for each elements of its case and that Beggs Landers can establish each element for a valid defense to Clark Love's claim.

Clark Love responded and claimed the commercial speech and bodily injury exemption applied in this case and barred application of the TCPA. It also argued that it established its prima facie case for all its allegations and that Beggs Landers failed to establish that it was entitled to any affirmative defense. Beggs Landers tried to remove the case to federal court, but the removal was denied by the federal district court judge.

As the case progressed, Beggs Landers sent Clark Love's attorneys the following e-mail:

> . . . we can see that are [sic] employees of clh are calling our toll-free line over and over and hanging up. We have extensive caller ID and keep all logs. Please instruct your client and all of his employees and so forth to cease trying to contact us when they have [your firm] as their attorneys. I doubt the employees are contacting us for representation.

Beggs Landers also responded to Clark Love's response to its motion to dismiss and argued that the commercial speech and bodily injury exemption did not apply in this case, that Clark Love did not establish a prima facie case, and that the absolute immunity defense applied to its case. The trial court held a hearing and afterwards denied Beggs Landers's motion to dismiss. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008.

## II.     TCPA

By its five issues, Beggs Landers argues that the TCPA applies to what it characterizes as Clark Love's retaliatory lawsuit, the commercial speech and bodily injury exemptions do not bar application of the TCPA in this case, that Clark Love did not submit clear and sufficient evidence to establish its prima facie case on each element on its causes of action, and that Beggs Landers established its absolute immunity/communicative privilege defense.

## A.     Standard of Review

"The Texas Citizen's Participation Act (TCPA) protects citizens who [associate], petition or speak of matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011. That protection comes in the form of a special motion to dismiss, subject to an expedited review, for "any suit that appears to stifle the defendant's" exercise of those rights. *In re Lipsky*, 460 S.W.3d at, 584. We review a trial court's ruling on a TCPA motion to dismiss de novo. *Lane v. Phares*, 544 S.W.3d 881, 886 (Tex. App.—Fort Worth 2018, no pet.). Specifically, we consider de novo whether each party has met its respective burden under the Act's dismissal mechanisms. *Grant v. Pivot Tech. Solutions, Ltd.*, 556 S.W.3d 865, 873 (Tex. App.—Austin Aug. 3, 2018, pet. denied). To the extent that resolution of the appeal turns on construction of the TCPA, we review that de novo as well. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). When construing the TCPA, as with any other statute, our objective is to give effect to the legislative intent, looking first to the statute's plain language. *Id.* If that

language is unambiguous, "we interpret the statute according to its plain meaning." *Id.* Also, we construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b).

**B.      Applicable Law**

Section 27.003 of the TCPA provides that a party may move to dismiss a legal action that "is based on, relates to, or is in response to [that] party's exercise of" one of three rights: free speech, petition, or association. *Id.* § 27.003(a). Reviewing a TCPA motion to dismiss requires a three-step analysis. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *Kassab v. Pohl*, __ S.W.3d__, __, 2020 WL 5552459, *3 (Tex. App.—Houston [1st Dist.] Sept. 17, 2020, no pet.). If the moving party meets that burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *In re E.I. DuPont de Nemours & Co*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam). If the nonmoving party satisfies that requirement, the burden finally shifts back to the moving party to prove each essential element of any valid defenses by a preponderance of the evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

A nonmovant plaintiff can avoid the TCPA's burden-shifting requirements by showing that one of the TCPA's several exemptions applies. *See id.* § 27.010. Among them is the commercial speech exemption. *Id.* § 27.010(b). It states that the TCPA does

9

not apply to, and therefore is not a vehicle to achieve dismissal of, a legal action brought against a person "primarily engaged in the business of selling or leasing goods or services," if the statement or conduct connected to the exercise of one of the statutory rights "arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." *Id.*; *Kasseb*, 2020 WL 5552459, at *4. The party asserting the commercial speech exemption has the burden to prove that the exemption applies to the communications at issue. *Kasseb*, 2020 WL 5552459, at *4.

## C.    Discussion

The parties do not dispute that Beggs Landers's claims constitute "legal actions" as that phrase is defined by the TCPA. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (defining "legal action" to include any "cause of action"); *Bejarano v. Dorgan*, No. 03-19-00182-CV, 2019 WL 4458798, *2 (Tex. App.—Austin Sept. 18, 2019, no pet.) (mem. op.). These legal actions arise from Beggs Landers's exercise of its right to free speech, which the statute defines as "any communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7). "Matters of public concern" include issues related to "health or safety," "community well-being," or "goods, products, or services in the market." *Id.* § 21.001(3).

Because Beggs Landers satisfied its burden to show the TCPA is applicable to Clark Love's claims, to avoid dismissal, Clark Love must make a prima facie case for each element of those claims or must demonstrate that its claims fall into a statutory exemption. *See id.* § 27.005(c); *Grant*, 556 S.W.3d at 872–73; *Bejarano*, 2019 WL 4458798, at *2.

10

As the exemption question is dispositive of the appeal, we will analyze the applicability of the commercial speech exemption without evaluating Clark Love's prima facie case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b); TEX. R. APP. P. 47.1; *Bejarano*, 2019 WL 4458798, at *2. We express no opinion on Clark Love's ability to prevail on those claims.

### 1. Commercial Speech Exemption

In its response to Beggs Landers's motion to dismiss, Clark Love alleged that the commercial speech exemption applied in this case. The Texas Supreme Court stated that the TCPA's commercial speech exemption was not clearly written and clarified it explaining that:

> Focusing on the text and context of the TCPA's commercial-speech exemption, we construe the exemption to apply when (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.
>
> . . . .
>
> While these clauses do not expressly state that the statement or conduct must arise out of "the defendant's" sale or lease of goods or services, or that the defendant be acting in its capacity as a seller or lessor of those goods or services, we believe that is the only reasonable and logical construction of the exemption when considered within its statutory context.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b).

In our view, all of the factors are met for Clark Love. Here, Beggs Landers was clearly in the business of selling legal services. "Other cases have recognized that

11

attorney efforts to engage prospective clients and provide them with paid legal services meet the first element of the *Castleman* test." *Kasseb*, 2020 WL 5552459, at *5; *see Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 189 (Tex. App.—El Paso 2014, no pet.) (stating that "case law appears settled [that] lawyer advertising is commercial speech"). The claims against Beggs Landers are based on their statements and conduct in their capacity as sellers of legal services. *See Kasseb*, 2020 WL 5552459, at *5; *Miller-Weisbrod*, 511 S.W.3d at 191 (concluding that attorney advertisement to people who might have a medical malpractice claim against a specific physician identified in the advertisement was created "primarily to attract clients allegedly injured by [identified physician]"). Additionally, the mailing of attorney advertisements to current and former clients of Clark Love about specific claims they might be able to pursue against Clark Love qualifies as statements or conduct that arose out of a commercial transaction involving the type of legal services Beggs Landers provides. *Kasseb*, 2020 WL 5552459, at *5; *see Miller-Weisbrod*, 511 S.W.3d at 191 (concluding that attorneys' speech "arose from the sale of their legal services to potential customers" reached through their attorney advertisements). The advertisements commented on Clark Love's handling of the TVM settlement cases and solicited clients for proposed "commercial transactions"— such as those that Beggs Landers provides. *See Castleman*, 546 S.W.3d at 688. The advertising statements clearly arose out of legal transactions between Clark Love and its clients. The direct-targeted mailings were intended for current and former TVM clients who were represented by Clark Love. A "commercial transaction" need not be consummated and can include conduct or statements that merely propose a commercial transaction.

12

*Bejarano*, 2019 WL 4458798, at *3; *see Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, *6 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.) (quoting *Castleman*, 546 S.W.3d at 690). The statements made by Beggs Landers in its advertisements showed it "pursued business for itself and stood to profit from it." *Bejarano*, 2019 WL 4458798, at *3.

In sum, the statements Clark Love challenged were squarely within the commercial speech exemption. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010. Accordingly, the district court did not err in denying Beggs Landers's motion to dismiss. We overrule Beggs Landers's first and second issues.[2]

## III. INJUNCTION

Clark Love requested a temporary restraining order and temporary and permanent injunction. Clark Love asked the trial court, in part, to restrain Beggs Landers and its members from soliciting clients to sue Clark Love. After a hearing was conducted, the trial court granted the temporary injunction on September 4, 2019. Beggs Landers filed an interlocutory appeal of the temporary injunction on September 5, 2019. On September 27, 2019, the trial court issued an amended order granting the temporary injunction that included findings of fact and a trial date.

In appellate cause number 13-19-00454-CV, Beggs Landers appeals the trial court's granting of the injunction. It alleges that the trial court abused its discretion: (1) in signing the amended injunction after the automatic stay was imposed by its appeal filing;

---

[2] Because we hold that the commercial speech exemption is dispositive, we decline to address the remaining issues. *See* TEX. R. APP. P. 47.1.

13

(2) by signing the temporary injunction in violation of Texas Rule of Civil Procedure 683; and (3) by finding in its amended order that Clark Love has a probable right to recovery when Beggs Landers's defenses are considered.

## A. Standard of Review

A temporary injunction hearing allows the trial court to determine whether the party seeking temporary injunctive relief is entitled to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain temporary injunctive relief, "the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id*. Should a trial court grant an injunction, Rule 683 of the Texas Rules of Civil Procedure dictates that the order "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other documents, the act or acts sought to be restrained." TEX. R. CIV. P. 683.

We review a trial court's decision to grant or deny an application for temporary injunction for abuse of discretion. *Butnaru*, 84 S.W.3d at 211; *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 838 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014. A trial court abuses its discretion when it acts "arbitrarily and unreasonably, without reference to guiding rules or principles, or misappl[ies] the law to the established facts of the case." *Bay Fin. Savs. Bank, FSB v. Brown*, 142 S.W.3d 586, 589 (Tex. App.—Texarkana 2004, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). It

14

is not an abuse of discretion "if some evidence reasonably supports the trial court's decision." *Butnaru*, 84 S.W.3d at 211; *Ahtna Support & Training Servs., LLC v. Asset Prot. & Sec. Servs., LP*, 13-19-00196-CV, 2020 WL 1856470, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 9, 2020, no pet.) (mem. op.).

## B. Modification

In its first issue, Beggs Landers argues that the trial court abused its discretion by signing the amended order after a stay was issued with the filing of its appeal. However, if, after an appeal has been perfected, a trial court modifies the appealed-of order, the reviewing court "must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the subsequent order or judgment." TEX. R. APP. P. 27.3; *see also Flamingo Permian Oil & Gas, L.L.C. v. Star Expl., L.L.C.*, 569 S.W.3d 329, 332 (Tex. App.—El Paso 2019, no pet.); *Parker v. Schlumberger Tech. Corp.*, 475 S.W.3d 914, 926 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Tex. Health & Human Servs. Comm'n v. Advocates for Patient Access, Inc.*, 399 S.W.3d 615, 625 (Tex. App.—Austin 2013, no pet.). Where the complained-of defects of an initial order are remedied in the issuance of a subsequent order, the initial complaints become moot. *Flamingo*, 569 S.W.3d at 331 (dismissing as moot three issues rectified by the issuance of a subsequent order executed while the appeal was pending); *Ahtna Support*, 2020 WL 1856470, at *3; *see also Smith v. Smith*, 681 S.W.2d 793, 797 (Tex. App.—Houston [14th Dist.] 1984, no writ).

The appellate record here indicates that the initial September temporary injunction order was superseded by the amended order issued on September 27, 2019. The

15

amended order includes all the requirements as laid out in Texas Rule of Civil Procedure 683. *See* TEX. R. CIV. P. 683. The amended order is specific in its findings and includes them in the order, clearly states what actions are included in the injunction, and sets a future trial date for the parties to appear before the court. Therefore, there was no abuse of discretion when the trial court signed the amended order and made its findings accordingly. *See* TEX. R. APP. P. 27.3; *see also Flamingo*, 569 S.W.3d at 332; *Parker*, 475 S.W.3d at 926; *Advocates for Patient Access*, 399 S.W.3d at 625.   We overrule Beggs Landers's first and third issues.

Additionally, Beggs Landers argues in its second issue that the original injunction order failed to comply with Texas Rule of Civil Procedure 683. However, because any complained–of issues in the initial order are rendered moot by the issuance of the subsequent order, there is no complaint for us to review. *Flamingo,* 569 S.W.3d at 331. We overrule its second issue.

## IV.   CONCLUSION

In appellate cause number 13-19-00446-CV, we affirm the trial court's judgment. In appellate cause number 13-19-00454-CV, we affirm the trial court's injunction order.

GINA M. BENAVIDES
Justice

Delivered and filed the
17th day of December, 2020.

16